IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| PELE IP OWNERSHIP LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No.: |
| SAMSUNG ELECTRONICS CO., LTD., and | ) |
| | ) |
| SAMSUNG ELECTRONICS AMERICA, INC., | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff Pele IP Ownership LLC, by its attorneys, for its complaint against Samsung Electronics Co., LTD. and Samsung Electronics America, Inc., states as follows:

**THE PARTIES**

1. Plaintiff Pele IP Ownership, LLC ("Pele IP") is a Delaware corporation and, by assignment, owns the trademark rights, copyrights, right of publicity and all other intellectual property rights of Edson Arantes Do Nascimento, known worldwide as Pelé.

2. Defendant Samsung Electronics Co., Inc. ("Samsung") is a Korean company with its headquarters in Suwon, South Korea. Samsung conducts business throughout the world. Samsung, according to its website, "leads the global market in high-tech electronics manufacturing and digital media."

3. Defendant Samsung Electronics America, Inc. ("Samsung America") is a New York Corporation with its principal place of business in Ridgefield Park, New Jersey and is

registered to do business in Illinois. Samsung America is a wholly-owned Samsung subsidiary that, among other things, markets Samsung's televisions to American consumers.

## NATURE OF THE CASE

4. This case arises out of the Defendants' unauthorized use of Pelé's identity in a nationally-distributed advertisement promoting Samsung and its products. Pele IP brings these claims for violation of the right to publicity, false endorsement, deceptive business practices and unfair competition against Defendants to remedy the damage caused by Defendants' unauthorized advertisement.

## JURISDICTION

5. Count I of this Action arises under the Lanham Act of 1946, as amended, 15 U.S.C. §§1051 et seq. This Court has jurisdiction over this cause of action under 15 U.S.C. §1121 and 28 U.S.C. §§1331 and 1338.

6. Counts II-IV of this Action arise under state statutory and common law. This Court has jurisdiction over these claims under 28 U.S.C. §1338(b) in that these claims are joined with substantial and related claims brought under the trademark laws of the United States (15 U.S.C. §§1051 et seq). This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367 because the federal and state claims are based on the same operative facts, and because judicial economy, convenience and fairness to the parties will result if the Court assumes and exercises jurisdiction over the state law claims.

7. This Court has personal jurisdiction over both Defendants because they caused the advertisement at issue in this case to be distributed in this District and elsewhere in Illinois where they market and sell consumer electronics.

**FACTUAL BACKGROUND**

8. Now retired from playing, Pelé is widely regarded as the greatest soccer player in history. In 1999, he was elected Athlete of the Century by the International Olympic Committee and was voted World Player of the Century by the International Federation of Football History & Statistics ("IFFHS"). The IFFHS counts Pelé as the most successful league scorer in the world, having scored 541 league goals, with a total of 1,281 goals in 1,363 games, a feat that earned him the Guinness Book of World Record for most career goals scored in soccer.

9. Among his many lifetime honors, Pelé was declared a national treasure by the Brazilian President, received a lifetime achievement award from Nelson Mandela, was bestowed with an honorary knighthood from Queen Elizabeth II at a ceremony in Buckingham Palace and was appointed as UNESCO's goodwill ambassador. Time Magazine named Pelé one of the 100 most influential people of the twentieth century.

10. Pelé has also had enormous success as an endorser of products and services in which businesses that wish to profit from an association with Pelé contract with him to use aspects of his world famous identity, including his image and persona, in their advertising and marketing materials.

11. By carefully controlling the nature and frequency of his product endorsements – rejecting far more requests to use his name and persona than he grants – Pelé has enhanced and maintained the value of his endorsements.

12. The majority of Pelé's income, and his income potential, is now derived from Pele IP's ability to license his name and persona to commercial sponsors who wish to capitalize on Pelé's fame. As a business, the licensing of Pelé's identity is just as important to him now as his professional soccer playing career once was.

13. Because of the public's widespread knowledge and recognition of Pelé and admiration for him, goods and services endorsed by and associated with Pelé have come to be well and favorably known and have benefitted greatly from their association with Pelé.

14. Pelé's name and persona have developed enormous commercial value and secondary meaning in promoting products as a result of the public's widespread knowledge and admiration of him.

15. In the second half of 2013, Samsung negotiated with Pelé and his then licensing company for the right to use Pelé's identity, including his name, image and likeness, in an advertising campaign for all Samsung electronic devices. Pele was prepared to enter into the proposed license to allow Samsung the right to use Pelé's identity in connection with the advertisement and promotion of Samsung products.

16. At the last minute, Defendants pulled out of the negotiations and never obtained the right to use Pelé's identity in any manner or in any format.

17. In October 2015, Defendants placed a full-page ad on the last page of the first section of *The New York Times*, a copy of which is attached to this Complaint as Exhibit A. On information and belief, the ad was distributed nationwide.

18. Taking up approximately two thirds of the full-page ad is the image of a Pelé lookalike — a smiling man who very closely resembles Pelé. Next to the Pelé lookalike is a superimposed photograph of a Samsung television, which depicts a soccer match in which one of the players is seen making a modified bicycle or scissors-kick, perfected and famously used by Pelé.

19. Below the Samsung television and next to the mouth of the Pelé lookalike is a first-person endorsement of the Samsung television, which states:

> More colour.  More wonder.
>
> Sport.  I love it.  Every match, every last minute screamer, every stumble for the finishing line.  So I don't just want to watch it, I want to feel it.  I want colours so brilliant that I'll feel like I'm in the stadium.  Introducing the next generation SUHD TV from Samsung.
>
> See More.  Feel More.

20. The bottom of the ad includes the words and logo of the Samsung SUHDTV and the words "With New Nano Crystal Display."

21. The Samsung full-page ad was created or authorized by Defendants.

22. Defendants caused the advertisement at issue in this case to be distributed in this District and elsewhere in Illinois where they market and sell consumer electronics.

23. Defendants never requested or received Pele IP's permission to use Pelé's identity or to imply his endorsement in connection with the goods offered by Defendants.

24. Defendants' advertisement, which uses Pelé's identity through the use of a lookalike to promote the sale of Samsung's electronic products, is likely to confuse consumers as to Plaintiffs' sponsorship or approval of those products.

25. Pele IP has been damaged by Defendants, whose unauthorized advertisement infringes Pelé's right of publicity and falsely conveys Pelé's endorsement of Defendants' goods, leading consumers to wrongly conclude that Pelé endorses those goods.  The advertisement further damages Pele IP by diminishing Pelé's endorsement value, limiting the number and scope of potential licensees of Pelé's identity and unfairly enriching Defendants.

## COUNT I

### (PLAINTIFF'S CLAIM FOR VIOLATION OF SECTION 43(a) OF THE LANHAM ACT — FALSE ENDORSEMENT)

26. Pele IP realleges and incorporates by reference paragraphs 1 through 25 of this Complaint.

27. Defendants' unauthorized use of Pelé's identity, including his image and persona, in its advertisement was a false or misleading representation of fact that falsely implies Pelé's endorsement of Defendants' goods.

28. Defendants' unauthorized use of Pelé's identity

(a) is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with Pelé or as to the origin, sponsorship or approval of Defendants' goods by Pelé in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); or

(b) misrepresents the nature, characteristics, or qualities of Defendants' goods, services, or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

29. Pele IP has been damaged by these acts. Pele IP has no adequate remedy at law.

30. This case is an exceptional case pursuant to 15 U.S.C. § 1117.

WHEREFORE, Pele IP requests that relief be granted in its favor and against Defendants, jointly and severally, for (a) damages sustained by Pele IP, including Defendants' profits, in an amount greater than $10,000,000, such damages to be trebled pursuant to 15 U.S.C. § 1117, (b) attorneys' fees and costs, (c) a permanent injunction requiring Defendants to refrain from any use of Pelé's identity without prior authorization from Pele IP, (d) an order requiring Defendants

to place corrective advertising in future issues of *The New York Times* and (e) such other and further relief as the Court deems just and proper.

## COUNT II

### (PLAINTIFF'S CLAIM FOR VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT)

31. Pele IP realleges and incorporates by reference paragraphs 1 through 25 of this Complaint.

32. Defendants' unauthorized use of Pelé's identity for commercial purposes is a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1-60.

33. Defendants' use of Pelé's identity was unauthorized because Defendants did not obtain Pele IP's consent to use Pelé's identity in connection with the advertisement. In fact, Defendants did not even request Pelé' or Pele IP's consent.

34. Defendants' use of Pelé's identity was willful because they used Pelé's identity intentionally and with knowledge that its use was not authorized.

35. Pele IP has been damaged by Defendants' unauthorized use of Pelé's identity. Pele IP has no adequate remedy at law.

WHEREFORE, Pele IP requests that relief be granted in its favor and against Defendants, jointly and severally, for (a) damages sustained by Pele IP, including Defendants' profits, in an amount greater than $10,000,000, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Defendants to refrain from any use of Pelé's identity without prior authorization from Pele IP, (e) an order requiring Defendants to place corrective advertising in future issues of *The New York Times* and (f) such other and further relief as the Court deems just and proper.

## COUNT III

**(PLAINTIFF'S CLAIMS FOR VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT)**

36. Pele IP realleges and incorporates by reference paragraphs 1 through 25 of this Complaint.

37. Defendants' acts constitute unfair methods of competition and unfair or deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 et seq., in that those acts created a likelihood of confusion or misunderstanding as to Pele's or Pele IP's sponsorship or approval of Defendants' goods, or created a likelihood of confusion as to Defendants' affiliation, connection or association with Pelé or Pele IP.

38. Defendants' conduct in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act was willful and outrageous, perpetrated by evil motive or with reckless indifference to the rights of others.

39. Pele IP has been damaged by these acts. Pele IP has no adequate remedy at law.

WHEREFORE, Pele IP requests that relief be granted in its favor and against Defendants, jointly and severally, for (a) damages sustained by Pele IP in an amount greater than $10,000,000, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Defendants to refrain from any use of Pelé's identity without prior authorization from Pele IP, (e) an order requiring Defendants to place corrective advertising in future issues of *The New York Times* and (f) such other and further relief as the Court deems just and proper.

## COUNT IV

**(PLAINTIFF'S CLAIMS FOR COMMON LAW
UNFAIR COMPETITION)**

40. Pele IP realleges and incorporates by reference paragraphs 1 through 25 of this Complaint.

41. Defendants' acts constitute unfair competition under the common law of the State of Illinois.

42. Defendants' acts were willful and damaged Pele IP. Pele IP has no adequate remedy at law.

WHEREFORE, Pele IP requests that relief be granted in its favor and against Defendants, jointly and severally, for (a) damages sustained by Pele IP in an amount greater than $10,000,000, (b) punitive damages, (c) attorneys' fees and costs, (d) a permanent injunction requiring Defendants to refrain from any use of Pelé's identity without prior authorization from Pele IP, (e) an order requiring Defendants to place corrective advertising in future issues of *The New York Times* and (f) such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pele IP hereby demands a trial by jury.


Dated:  March 16, 2016 /s/ Frederick J. Sperling
Frederick J. Sperling
Clay A. Tillack
Ann H. MacDonald
Shawna S. Boothe

SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500

Attorneys for Plaintiff
Pele IP Ownership LLC

# EXHIBIT A

