IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Pele IP Ownership LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.,<br><br>        Defendants. | Case No. 1:16-cv-03354<br><br>Hon. John J. Tharp Jr. |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNT II FOR LACK OF STANDING

Defendants Samsung Electronics Co., Ltd. ("SEC"), and Samsung Electronics America, Inc. ("SEA" and together with SEC, "Samsung"), by and through their counsel, Paul Hastings LLP, submit this memorandum of law in support of their motion to dismiss Count II of the amended complaint ("Amended Complaint") filed by Pele IP Ownership LLC ("Plaintiff"), on the basis that Plaintiff lacks standing to assert a violation of publicity rights and fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).[1]

## I.    PRELIMINARY STATEMENT

Plaintiff's second cause of action is a state law claim for violation of the Illinois Right of Publicity Act, which Plaintiff alleges falls under this Court's supplemental jurisdiction. (Am. Compl. ¶ 6.) The Amended Complaint does not allege any facts tying the parties, the conduct at issue or the purported injury to Illinois, other than that the advertisement containing a purported look-alike of Pelé was published in *The New York Times* and distributed nationally, including in

---

[1] Defendants are contemporaneously filing a motion to dismiss the Amended Complaint in its entirety based on lack of jurisdiction and improper venue. That motion is potentially case-dispositive and, if granted, would obviate the need for the Court to address or resolve the issues raised by the instant motion.

Illinois. Although the Amended Complaint alleges that Plaintiff owns Pelé's right of publicity by assignment (Am. Compl. ¶ 1), the ability to assign publicity rights is not uniform across jurisdictions. In states that do not permit assignment of publicity rights, an assignee has no standing and cannot state a claim upon which relief may be granted. In states that limit the right of action to natural persons, an assignee that is a juristic entity lacks standing and fails to state a claim on that separate basis. Accordingly, as a threshold matter, this Court must determine which state's law applies to the purported assignment of Pelé's publicity rights and to the alleged violation of those rights.

A federal court exercising supplemental jurisdiction applies the choice of law rules of the forum state, in this case Illinois. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 WL 5903508, at *2 (N.D. Ill. Nov. 22, 2011); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986) (federal courts have extended *Klaxon* to determine that the forum state's choice-of-law rules govern pendent state claims). Illinois courts follow the doctrine of depecage, subjecting each issue in a case or cause of action to a separate choice of law analysis. *Doctor's Data,* 2011 WL 5903508, at *10; *Townsend v. Sears, Roebuck & Co*., 227 Ill.2d 147, 879 N.E.2d 893, 901 (Ill. 2007). Courts in Illinois, adopting the approach of the Second Restatement of Conflict of Laws, "apply the law of the state with the most significant relationship to the dispute and the parties, as defined by the issues raised." *Doctor's Data,* 2011 WL 5903508, at *3. As set forth in greater detail herein, New York, not Illinois, has the most significant relationship to the dispute and the parties. Because there is a decisive difference between Illinois

law and New York law with respect to publicity rights, Defendants submit that this Court should apply New York law to Plaintiff's right of publicity claim.[2]

New York rights of publicity claims are governed by New York Civil Rights Law §§ 50-51. New York courts have held that the rights under that statute are not transferable. Moreover, the private right of action under § 51, by its own terms, is available only to natural persons. Therefore, even accepting all well-pled allegations in the Amended Complaint as true, viewing them in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, as the Court must do when considering a Rule 12(b)(6) motion to dismiss, *Oberweis Dairy, Inc. v. Democratic Cong. Campaign Comm., Inc.*, No. 08 C 4345, 2009 WL 635457, at *1 (N.D. Ill. Mar. 11, 2009) (citing *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993)), the allegations in the Amended Complaint do not "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Id.* (quoting *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

## II.     SUMMARY OF PERTINENT FACTS

The following is a summary of facts relevant to the Court's choice of law analysis, which Defendants submit is outcome determinative inasmuch as Plaintiff lacks standing to assert a claim under New York Civil Rights Law § 51. Plaintiff's Amended Complaint is exceedingly sparse with respect to allegations concerning the relationship of the dispute and the parties to the state of Illinois. Indeed, the only allegation relating the facts of the case to Illinois is that the Defendants "caused the advertisement at issue in this case to be distributed in this District and elsewhere in Illinois where they market and sell consumer electronics." (Am. Compl. ¶ 7.) As detailed in Defendants' contemporaneously filed Motion to Dismiss for Lack of Jurisdiction and

---

[2] In addition to the issues raised in this motion, there are several fundamental differences between Illinois law and New York law that apply to the claims in this case and that, although not pertinent to Defendants' Rule 12(b)(6) motion, nonetheless will require adjudication at subsequent stages of the litigation.

Improper Venue, as well as the sworn declarations filed in support thereof, neither the parties nor the events giving rise to this cause of action have any meaningful connection with Illinois. Rather, the facts indisputably establish that the state with "the most significant relationship to the dispute and the parties" is New York.

The gravamen of Count 2 is Plaintiff's claim that the subject advertisement violated Pelé's right of publicity. The Amended Complaint alleges that Plaintiff is the owner by assignment of Pelé's rights of publicity. (Am. Compl. ¶ 1.) Plaintiff is a Delaware corporation. *Id*. Plaintiff appears to have a place of business in New York, and has no known ties to Illinois. (Declaration of Natalie G. Furman, dated June 10, 2016 ("Furman Decl.") ¶¶ 6-9 and Exhibits B and C thereto.)

Moreover, Pelé—the individual whose identity is at issue—has himself stated that he resides in New York, maintaining two residences in that state. (Furman Decl. ¶¶ 3-5 and Exhibit A thereto.) He has no known similar connection to Illinois. (Furman Decl. ¶ 8.) To the extent that Plaintiff argues harm to Pelé such as through loss of licensing and endorsement income, that injury is felt in New York (if it is felt in the United States at all).

In addition, Defendant SEA is a New York corporation, with a principal place of business in New Jersey. (SEA Decl. ¶ 2.) Although licensed to do business in numerous states, including Illinois, it has no similar connection to Illinois. (SEA Decl. ¶¶ 2, 13-17.)

The conduct alleged in the Amended Complaint occurred either outside the United States or through ad-placement agency personnel based in New York. (SEC Decl. ¶¶ 16-19.) The advertisement was designed and created by personnel based in the United Kingdom and in South Korea and was placed in *The New York Times* through the efforts of agency personnel based in New York. (SEC Decl. ¶¶ 16-19.) The advertisement appeared in the national edition of *The*

*New York Times*, as opposed to the Midwest or other regional edition, and was in no manner targeted to reach Illinois residents. (SEC Decl. ¶ 20.) Although Defendants accept the allegation that the advertisement was distributed nationally, including in Illinois, the Court may take judicial notice of the facts that *The New York Times* was founded in New York, is published by The New York Times Company, which is (and always has been) headquartered in New York, that its primary locality is New York, and that it serves New York as its primary market. Fed. R. Evid. 201. (Furman Decl. ¶ 10-12 and Exhibits D, E and F thereto.) Indeed, regional circulation figures show that the print circulation of *The New York Times* on Fridays, the day the advertisement ran, is approximately *ten times* greater in New York than it is in Illinois. (Furman Decl. ¶ 12 and Exhibit F thereto.)

**III.     ARGUMENT**

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pled allegations in the complaint as true, views the allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Bontkowski v. First Nat'l. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007)). *See* also E.E.O.C. v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007) ("allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'"). In addition, where there is no possibility that a plaintiff could amend the complaint to state a claim upon which relief can be granted, the complaint should be dismissed with prejudice. *Bogie v. Rosenberg*, 705 F.3d 603, 616 (7th Cir. 2013) (dismissal with prejudice appropriate where leave to amend would be futile); *Stewart v. Nw. Mut. Life Ins. Co.*,

No. 15 C 11600, 2016 WL 1555715, at *8 (N.D. Ill. Apr. 18, 2016) (dismissing with prejudice where defects in claim are "legal defects that cannot be avoided by repleading").

      A.      **Under Illinois Choice of Law Principles, New York Law Governs the Cause of Action for Violation of A Right of Publicity**

Where, as here, a federal court reviews a state law claim under supplemental jurisdiction, it must apply the forum state's choice of law rules to determine which state law to apply. In Illinois, such choice of law analysis is required only if there is a conflict of laws that would affect the outcome of the case. *Doctor's Data,* 2011 WL 5903508, at *2, citing *Townsend*, 227 Ill. 2d 147 at 154-56, 879 N.E.2d at 898–99. Because of the determinative differences between New York and Illinois with respect to the right of publicity,[3] the Court must apply Illinois choice of law principles to analyze which state's law governs that cause of action.

Courts in Illinois follow the approach of the Second Restatement of Conflict of Laws, and "apply the law of the state with the most significant relationship to the dispute and the parties, as defined by the issues raised." *Townsend*, 879 N.E.2d at 903; *Doctor's Data,* 2011 WL 5903508, at *3. As part of that analysis, Illinois courts follow the doctrine of depecage and, where appropriate, subject each issue to a separate choice of law analysis. *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2016 WL 1086510, at *10 (N.D. Ill. Mar. 21, 2016); *Townsend*, 227 Ill. 2d at 513, 879 N.E.2d at 901. The choice of law analysis under the Second Restatement takes account of the general guiding principles of section 6, the objective of using those principles to determine which state has the "most significant relationship" to the parties and the issues, and the

---

[3] Inasmuch as the Illinois statute allows for the transferability of rights of publicity, 765 ILCS 1075/15, enforcement of those rights by a transferee, 765 ILCS 1075/20, and enforcement of rights by a natural or juristic person, 765 ILCS 1075/5 (defining "person" as a "natural or juristic person"), whereas the New York statute does not, those differences are substantial and outcome determinative on the facts of this case, which involves a juristic entity asserting rights of publicity purportedly owned as an assignee.

specific lists of "particularized connecting factors" to apply depending on the nature of the claim. *Townsend*, 227 Ill. 2d at 512-13, 879 N.E.2d at 900-901.

Section 6 lists the following general considerations, which are non-exclusive and are not listed in order of importance: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6 and comment c (1971). However, it is recognized that in a given case, the principles may point in different directions and "in tort cases, for example, these principles, by themselves, do not enable courts to formulate precise choice-of-law rules." *Id*. Courts therefore look to the principles and specific factors set out by the Second Restatement depending on the nature of the dispute, i.e., whether it sounds in tort, contract, property, etc.

The Illinois Right of Publicity Act ("IRPA") supplanted the common law tort of misappropriation of one's likeness, and violations of the IRPA are recognized as sounding in tort. *See, e.g., Jordan v. Jewel Food Stores, Inc*., 83 F. Supp. 3d 761, 771-72 (N.D. Ill. 2015); *Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 322-23, 859 N.E.2d 1188, 1192 (2006), *Berry v. Ford Modeling Agency*, No. 09-CV-8076, 2012 WL 5470289, at *2 (N.D. Ill. Nov. 9, 2012), *aff'd sub nom. Berry v. Ford Models, Inc.*, 525 F. App'x 451 (7th Cir. 2013). In a tort case, the general principle is that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6."

Restatement (Second) of Conflict of Laws § 145(1), at 414 (1971).  The Second Restatement sets forth the following specific connecting factors to determine which state has the more significant relationship to an issue in a tort case: (1) the place of the injury; (2) the place where the injury-causing conduct occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties is centered.  Restatement (Second) of Conflict of Laws § 145(2); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 681 (7th Cir. 1986) ("In tort cases, Illinois generally follows the 'most significant relationship' approach, under which a court must weigh four factors: the place of the injury, the place of misconduct, the domicile of the parties, and the place where the relationship between the parties is centered").  The comments to Section 145(2) state that the domicile, residence, nationality, place of incorporation and place of business of the parties are "places of enduring relationship to the parties" that are the "single most important contact for determining the state of the applicable law as to most issues in situations involving the multistate publication of matter that injures the plaintiff's reputation or causes him financial injury or invades his right of privacy."  Restatement (Second) of Conflict of Laws § 145, comment e.

Although the Second Restatement does not include a section specific to violations of the right of publicity, the sections concerning multistate defamation and multistate invasion of privacy both provide that the law to be applied to most issues involving the tort will usually be the state of the person's domicile unless, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties.  *See* Restatement (Second) of Conflict of Laws §§ 150, 153.  Just as "[r]ules of defamation are designed to protect a person's interest in his reputation," so are rules governing the right of publicity.  With respect to

defamation, the Second Restatement's reasons that "[w]hen there has been publication in two or more states of an aggregate communication claimed to be defamatory, at least most issues involving the tort should be determined … by the local law of the state where the plaintiff has suffered the greatest injury by reason of his loss of reputation. This will usually be the state of the plaintiff's domicil[e] if the matter complained of has there been published." Restatement (Second) of Conflict of Laws § 150, comment e. That comment further states that, for multistate defamation torts, other contacts to consider in determining which state has the most significant relationship, include the state where the defendant engaged in the act of communication "such as assembling, printing and distributing a magazine or book" and the state(s) of the defendant's domicile, incorporation or organization and principle place of business. *Id. See also* § 153, comment d (the rule for multistate invasion of privacy is the same as multistate defamation). The same reasoning applies with equal force to a multistate publication alleged to violate the right of publicity.

Whether analogizing to the reasoning for defamation and privacy torts under §§ 150 and 153 or applying the factors used for torts under § 145, the Restatement factors unavoidably point to New York, rather than Illinois, as the state with the most significant relationship to the right of publicity cause of action:

(1) **The place of injury** for causes of action involving reputation or privacy typically is the place of domicile or residence of the rights-holder. Restatement (Second) of Conflict of Laws §§ 145, 150, 153. Although Plaintiff is a Delaware Corporation and asserts that it is injured, the Amended Complaint alleges injury to Pelé himself, a resident of New York State. If an injury to Pelé's reputation or endorsement value has occurred in the United States at all, the

-9-

harm occurs where Pelé resides, namely, New York. In contrast, Plaintiff offers no allegation or basis for finding that Illinois is the place of injury.[4]

(2) To the extent that purportedly **injury-causing conduct** occurred in the United States, it occurred substantially in New York rather than in Illinois. The advertisement itself was distributed nationally, and therefore does not favor any state over another. However, the personnel responsible for placing the advertisement were based in New York and the advertisement was placed and published in *The New York Times*, a newspaper headquartered, published in and inextricably connected to New York.

(3) The factor concerning **the domicile, residence, nationality, place of incorporation and place of business of the parties** clearly favors New York. Pelé himself resides in New York, Plaintiff appears to have a principal place of business in New York, and Defendant SEA is incorporated there. Neither party has a similarly significant relationship with Illinois.

(4) The parties do not have a **relationship centered** in any state, so the final factor under § 145 is neutral. Looking to the overarching principles articulated in Section 6 of the Second Restatement, in the comments to §§ 145, 150, and 153, there is no basis to determine that Illinois has a more significant relationship than New York to the occurrence underlying the dispute or to the parties.

In addition, the **relative state interests in determining the issues** is an important consideration recognized both by the guiding principles of the Second Restatement and by the cases. Restatement (Second) of Conflict of Laws § 6. *See, e.g., Kamelgard v. Macura*, 585 F.3d

---

[4] To the extent that Plaintiff's domicile is considered, Defendants note that Delaware does not have a comparable statute under which Plaintiff could pursue a right of publicity claim. Although Delaware recognizes *privacy* torts, including "appropriation of some element of plaintiff's personality for commercial use," *Barbieri v. News-Journal Co.*, 56 Del. 67, 70, 189 A.2d 773, 774 (1963), such privacy rights typically are personal and not assignable.

334 (7th Cir. 2009) (only New Jersey, where plaintiff lived, had substantial interest in multi-state defamation case; Illinois had no interest in the case merely because some surgeons in Illinois may have learned of the defamatory statement); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 343 (N.D. Ill. 2002) ("Illinois has no greater interest in the action than any other state, because each state has an interest in defining and protecting the privacy interests of its citizens"); *Underground Sols., Inc. v. Palermo*, No. 13 C 8407, 2014 WL 4703925, at *4 (N.D. Ill. Sept. 22, 2014) ("California has a strong interest in protecting its businesses from injurious falsehood. Illinois, on the other hand, has a less significant interest in preventing injuries to out-of-state businesses").

As it applies here, New York clearly has a greater interest than Illinois in governing state law disputes between its own residents and citizens. Specifically, New York has an obvious interest in a claim that a New York corporation violated the publicity rights of a New York resident. New York also has a pronounced interest in disputes alleging that a New York corporate defendant used *The New York Times*—the preeminent New York newspaper, with its headquarters and substantial readership in New York—to violate a third party's publicity rights. Simply put, Illinois has no apparent interest in the dispute *at all*, much less an interest that exceeds New York's significant interest in determining the scope and contours of the rights involved in an alleged violation of publicity by a New York defendant in New York's most prominent newspaper, based on a purported look-alike of a New York resident. *See, e.g., Doctor's Data,* 2011 WL 5903508, at *4 (deciding that North Carolina, rather than Illinois, has significant interest in determining scope of protection to give non-Illinois speaker for anti-SLAPP defense). Accordingly, this Court should apply New York law to determine whether to dismiss Count II of the Amended Complaint for lack of standing and failure to state a claim.

### B. Plaintiff Lacks Standing For Count II Because Rights of Privacy and Publicity Are Not Assignable Under New York Law

New York law treats the right of publicity as part and parcel of the right of privacy. Both are governed entirely by New York Civil Rights Law §§ 50-51. At one time federal courts in New York began to develop a judicially-recognized "common law right of publicity," but the New York Court of Appeals has left no doubt that the right of publicity is part of and entirely encompassed by the statutory right of privacy, and is not an independent common law right. *Stephano v. News Grp. Publications, Inc.*, 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 224 (1984). The statute expressly protects the rights only of "living persons" and the cases are unequivocal that New York law does not provide for a post-mortem or descendible right of privacy. N.Y. Civ. Rights Law §§ 50–51. New York Courts also discuss privacy rights as being, by their nature, personal and non-transferable. *Rosemont Enterprises, Inc. v. Random House, Inc.*, 294 N.Y.S.2d 122, 129, 58 Misc. 2d 1, 7 (N.Y. Sup. Ct. 1968), aff'd, 32 A.D.2d 892, 301 N.Y.S.2d 948 (1969) (right of privacy is a "purely personal one which may be enforced only by the party himself"); *Bowman Gum v. Topps Chewing Gum*, 103 F. Supp. 944, 953 (E.D.N.Y. 1952) (the right under § 51 is "a purely personal right and non-assignable"). Prior case law holding that the "common law right of publicity" (unlike the right of privacy) was assignable in New York was called sharply into question by the *Stephano* decision, in which the New York Court of Appeals dismantled the entire concept of a common law right of publicity while declining to address the assignment or transfer of publicity rights. *Stephano*, 64 N.Y.2d at n.2. Consistent with the holding of *Stephano* that publicity and privacy rights are encompassed by the same law, cases decided since *Stephano* have indicated that publicity rights are not transferable. *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990) (no descendible right of publicity under New York law); *Buena Vista Home Entm't, Inc. v. Anderson*, No. 2:12-CV-03267-LDW, 2015 WL

5566488, at *1 (E.D.N.Y. May 5, 2015) (same). If such rights are not descendible as property to a party's estate upon death, it stands to reason that they are not alienable during a party's lifetime. In addition, the New York legislature repeatedly has declined to enact changes to the law that would create a descendible and transferable post-mortem right of publicity. Legislation that is currently pending proposes to define a "deceased individual's persona [as] personal property, freely transferable or descendible, in whole or in part," A.B. 7904, 239th Gen. Assemb., Gen. Sess. (N.Y. 2015), which strongly suggests that New York law also does not recognize a transferable property right in a living individual's persona.

Naturally, if an individual's right of publicity may not be assigned, the purported "assignment" from Pelé to Pele IP is of no effect under New York law. Pele IP owns no proprietary rights that would entitle it to sue for a violation of the right of publicity under the New York statute. Because a plaintiff cannot assert rights it does not own, Plaintiff cannot possibly amend the Amended Complaint to state a claim upon which relief can be granted. Applying New York law, the Court should dismiss Count II under Rule 12(b)(6) with prejudice.

### C. Plaintiff Lacks Standing For Count II Because Only A Natural Person Has A Right Of Action Under New York Civil Rights Law § 51.

Even if the Court were to decide for some reason that New York law permits the assignment of publicity rights, the Court should dismiss Count II on the independent basis that New York Civil Rights Law §§ 50-51 does not allow any right of action for a juristic entity. § 50 states that "[a] *person, firm or corporation* that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such *person* … is guilty of a misdemeanor" (emphasis added). § 51 provides in pertinent part as follows:

> Any *person* whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first

obtained as above provided may maintain an equitable action in the supreme court of this state against *the person, firm or corporation* so using *his* name, portrait, picture or voice, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used *such person's* name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages (emphasis added).

A plain reading of the statute, under basic principles of statutory construction, makes clear that whereas a natural person, firm or corporation may be a *defendant* in an action under §§ 50-51, only a natural person may sue for injunctive or monetary relief. Indeed, New York courts have granted motions to dismiss claims asserted by a corporate plaintiff under § 51 on the basis that a corporate plaintiff cannot state a claim upon which relief may be granted. *See Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 311 (N.D.N.Y. 2003) ("Plaintiff Rubin Mark, Inc. is a corporation and, therefore, has no right to sue under § 51. Thus, Plaintiff Rubin Mark, Inc. has not stated a claim upon which relief can be granted") (internal citation omitted). Pele IP, a business entity, has no right to sue under § 51, and cannot possibly amend the Amended Complaint to state a claim upon which relief may be granted. On that separate basis, the Court should dismiss Count II of the Amended Complaint with prejudice

## IV. CONCLUSION

New York is the state with the most significant relationship to the right of publicity claim and the parties, and has a body of law regarding publicity rights that differs from Illinois law in an outcome determinative way. Applying Illinois choice of law principles, the Court should find that New York law applies to the violation of the right of publicity, at least to the threshold issue of whether the law recognizes any enforceable rights. Because the right of privacy and publicity are not assignable under New York law, Pele IP does not own proprietary rights and lacks standing to bring a claim for violation of the right of publicity under New York statutory law. In addition, and independently, the New York statute provides a right of action only to natural

persons, not to business entities. Pele IP therefore lacks standing to bring a claim for that reason as well. Pele IP cannot cure either of those defects by amending its Amended Complaint, as no amendment could confer standing on an assignee or a business entity under New York law. For the aforementioned reasons, Defendants respectfully request that the Court dismiss Count II of the Amended Complaint with prejudice.

Dated: June 10, 2016

Respectfully submitted,

*/s/ Mark D. Pollack*

Mark D. Pollack
Emily L. Seymore
PAUL HASTINGS LLP
71 S. Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100
markpollack@paulhastings.com
emilyseymore@paulhastings.com

*Counsel For Defendants*

## CERTIFICATE OF SERVICE

      The undersigned, an attorney of record for Defendants Samsung Electronics America, Inc., and Samsung Electronics Co., Ltd. hereby certifies that on June 10, 2016, he served a copy of the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNT II OF THE AMENDED COMPLAINT FOR LACK OF STANDING** on counsel of record listed below by electronic means via the Electronic Case Filing (ECF) system:

Ann H. MacDonald
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500
Email: amacdonald@schiffhardin.com

Frederick J. Sperling
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500
Email: fsperling@schiffhardin.com

Clay A. Tillack
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500
Email: ctillack@schiffhardin.com

Shawna Shannon Boothe
Schiff Hardin
233 S Wacker Dr., Suite 6600
Chicago, IL 60606
(312) 258-5589
Email: sboothe@schiffhardin.com

                                          /s/  Mark D. Pollack
                                          Mark D. Pollack
                                          PAUL HASTINGS LLP
                                          71 S Wacker Dr., Suite 4500
                                          Chicago, IL 60606
                                          (312) 499-6000
                                          markpollack@paulhastings.com

                                          *Attorney for Defendants Samsung*
                                          *Electronics America, Inc. and Samsung*
                                          *Electronics Company, Ltd.*